Case No. 19-7072 et al., Altagracia Sanchez et al., Appellant v. Office of the State Superintendent of Education and District of Columbia, Ms. Flaherty for the appellant, Mr. Phillips for the appellee. Alright, Ms. Flaherty, are you there? Yes, Your Honor. Alright, please proceed with your three-minute opening statement. May it please the Court, Renee Flaherty for the appellant and Cross Appellees. This Court should reverse the District Court's dismissal under Rule 12b-1. The District Court ruled that Dale Sorcher has standing to bring this case. Without a doubt, she must comply with Aussie's regulations and take 24 hours of college credits or lose her job. But the District Court invoked prudential ripeness in dismissing her claims because it wanted to wait for factual development on how Aussie will approach hardship waivers. But those facts aren't necessary because hardship waivers don't matter for Ms. Sorcher. A hardship waiver wouldn't belong to her. It would belong to her employer. And if her employer got that waiver, it would bind Ms. Sorcher to work for that one employer indefinitely. It's reasonable for her to be in federal court today because she is worse off today than she was before the college requirement. Before Aussie enacted its regulations, Ms. Sorcher could just do her job. Now, she can take a gamble on her employer obtaining a hardship waiver and lose her ability to change her employer. Or she has six semesters left to take 24 college credit hours, all to comply with irrational regulations. Ms. Sorcher cannot wait until 2023 to file this case and then move for a temporary restraining order. Litigation takes years, going to college takes years, and Ms. Sorcher needs relief now. Her claims are ripe. Likewise, the District Court ruled that Alumi Sanchez has standing. When we filed this lawsuit, Ms. Sanchez had to get an associate's degree to comply with Aussie's regulations or lose her business. After we filed this lawsuit, Aussie changed its regulations to make experience waivers available to home providers like Ms. Sanchez. So now she faces the choice of going to college or filing a form every three years to renew her experience waiver. But tacking on an experience waiver option doesn't change her legal claims. Of course, it eliminates one of her equal protection arguments that allowing teachers who work in daycare centers to get experience waivers while not allowing home providers to do so was irrational. That argument is moot. But it doesn't eliminate the non-delegation claim, the substantive due process claim, or the other aspects of the equal protection claim. Now, of course, filing a complicated form to comply with regulations that were unlawfully adopted is a much smaller injury than having to go to college. But you can't moot a case by making an injury smaller. You moot a case by making an injury zero. And even if the court doesn't agree that Ms. Sanchez is entitled to prospective relief, she still has a valid claim for nominal damages. This case is justiciable. And to the extent that the court wishes to address it in the first instance, the district's cross-appeal also fails. First, plaintiffs state a valid non-delegation claim. OSSI acted with complete, untrammeled legislative authority here. No legislature or court was empowered to review what OSSI did. And if the non-delegation doctrine means anything, it means that intelligible principles must be enforceable. If an agency doesn't have to adhere to an intelligible principle, that's an unconstitutional delegation. The entire point of an intelligible principle is so that the courts can evaluate whether an agency has followed it, just as the Supreme Court stated in Yacus v. United States. Otherwise, an intelligible principle is a mere suggestion, exhortation, or plea for an agency to follow it. Unlike federal agencies and other D.C. agencies, where the organic statutes allow for review of rulemaking, OSSI does not. The district is muddying the waters by arguing that there is review of rulemaking in D.C. courts, but it's telling that the best support they can come up with is a case from 1991 in which the court uses the words arbitrary and capricious, but specifically equates that review with ultra-virus review. Plaintiffs also bring an equal protection claim. These regulations require more early childhood classes for people who don't have college degrees than for people who do. That means that if Ms. Sorcher did not already have a degree, she would be required to take fewer early childhood credits to comply with these regulations. That is irrational. And finally, plaintiffs bring a valid substantive due process claim. The college requirement is not rationally related to improving early childhood education. A college degree is not going to make my clients better at caring for children ages 0 to 3. There's no predicting what anyone would actually learn by getting an early childhood degree because there's no single coherent curriculum. That means it's an empty credential, and it is irrational for the district to require anyone to obtain it, especially when it places an insurmountable burden on our plaintiffs and hundreds of other daycare providers. This court should reverse the district court and remand for further proceedings. All right. Thank you. Judge Garland, any questions? Not at this time. Thank you. All right. Judge Pillard. I don't believe I have any questions. All right. Then we'll, unless you have something further, Ms. Flaherty, we'll hear from Mr. Phillips. No, Your Honor. I'd like to reserve my remaining time for rebuttal, and thank you. All right. Mr. Phillips. Good morning, and may it please the court, Graham Phillips on behalf of the district appellees. I'd like to use my opening time to offer the court a roadmap. In the course of preparing for this argument, I realized that I think there's a potential path through this case that can make the court's task a simple one. In short, this is a rare case where I think the court can bypass the just disability questions, some of which are complicated, and affirm on the merits, which are straightforward. I don't understand how the court can ever bypass the just disability questions, which are questions of jurisdiction. So if you want to take that roadmap, start explaining how we can ignore jurisdiction. Absolutely, Your Honor, and the short answer is that I'm not asking you to ignore jurisdiction. The reason that I think this path is available is because the only just disability concern as to mis-sorture is prudential rightness, and prudential rightness is not jurisdictional, and so does not implicate the Supreme Court's Steele Code decision. Do you think the district court's decision was only that it was prudentially unright? I think as to mis-sorture, yes, prudential rightness was the only rightness concern at issue, because the district court said that mis-sorture did have standing, and this court has said that constitutional rightness is really just the aspect of standing that the injury, in fact, must be actual or imminent. Did the district court say that it was a question of prudential rightness only? The district court didn't specifically address this distinction, but I think it is the case that in finding that mis-sorture had standing, the district court necessarily found that the constitutional aspect of rightness was satisfied, and that's the plaintiff's position as well in this case, that the issue as to mis-sorture is only a matter of prudential rightness. What about mis-sorture? I think there, because one of the issues there is whether her claims are moot, and I think that is a constitutional issue, although we have also made a prudential argument in addition, but I agree that with respect to Ms. Sanchez, it's not just a matter of prudential justiciability concerns. But I think the important point there, of course, is that you only need one of the plaintiffs to be justiciable in order to get at the merits, and here neither Ms. Holman nor Ms. Sanchez have any merits claims that are distinct from mis-sortures. So as long as the court can potentially reach mis-sortures, the merits issues, and agrees with us that those claims fail on the merits, then that would resolve the entire case. And so if the court were to assume, for sake of argument, the ripeness of Ms. Sorcher's claims, again, that's a way that I think the court can just go straight to the merits. Now, I would like to be clear that we stand by the justiciability arguments that we made in our briefs. If the court feels that it does have to decide those issues, we think we should win for the reasons that we explained there. But it's even clearer that we win on the merits. Each of plaintiff's three merits claims, we think, should easily be dismissed. Maybe you're getting to this, Mr. Phillips, but you say that Sanchez and Sorcher's claims are the same on the merits, but aren't they challenging slightly different regulations, future regulations for Sorcher and caregiver regulations for Sanchez? Are you saying that the claims are defective for the very same reasons? Yes, and I understand your question. The associate's degree requirement, so in that sense, it is substantively the same requirement, but as it applies to the two different types of positions that they're in, are codified at different parts of the DCMR. But in terms of substance, I mean, plaintiffs have never distinguished between these two things substantively. They have never made any kind of argument that this degree requirement could be constitutional as to one type of worker or not another. So I think in deciding Ms. Sorcher's claim on the merits of these constitutional issues, you are necessarily deciding the merits of Ms. Sanchez's claims as well, and I don't read anything in plaintiff's briefing to suggest otherwise. Well, if you could just assume for the moment that I'm old-fashioned and I'd like to hear the arguments on distinguishability first, whether they are prudential or not. What is your argument that Sorcher's claims are not right? So the issue with respect to Ms. Sorcher's is prudential rightness, as we say, and the central reasoning of the district court was that there would be value in delaying adjudication until further down the road because that would allow the development of a factual record about how OSSI is sort of criteria and its generosity or not with respect to granting hardship waivers. Well, her argument, as I understand it and as it was just made, is that the hardship waiver is not for her but for her employer. Is that right? That is correct. There's no indication that's going to change, is there? No, there's no indication that the framework will change and it will go to the person. But although Ms. Sorcher says that she is not interested and doesn't want a hardship waiver, there's sort of two points to make in response to that. The first is that if her employer applied for a hardship waiver and got one, I think whether or not Ms. Sorcher herself sort of believes that this is adequate or whether she sort of philosophically agrees that it's enough for her, I do think it would eliminate her injury. Can you hold on this? So right now she doesn't know whether she'll get a hardship waiver if she went to a new employer and so she has to make a decision to take the credit hours now. I don't understand how any of that is going to change. It's not going to make the legal analysis any easier or any different. Well, I think it could. And what the district court said about this is that the generosity that Aussie shows or how willing it is to grant waivers generally, and it's not just about whether Ms. Sorcher specifically applies for and gets a waiver, but the idea is that if Aussie turns out to be very generous with these waivers, that impacts the burdensomeness of this regulatory regime. And Plaintiff's own theory is that... But why does it impact the legality of the regime? Either the regulations survive rational basis or they don't. Either they survive the delegation attack, non-delegation attack, or they don't. I don't understand why the agency's decision to not enforce or to enforce only generously makes any difference to the legal question. Your question seems to be all an argument about how much pain she's going to bear, but it's not about whether there's a difference in the law. So I agree that the question about the waivers would not impact the non-delegation argument and the district court specifically recognized that, but the district court's point was that it could conceivably impact, for instance, the due process claim because Plaintiff's theory under the due process claim is about what a burden this regulatory regime is. And if Aussie is very free with hardship waivers, that impacts how burdensome the regulatory regime is. And so it could impact the merits decision down the road. Now, I acknowledge that, you know, in our view, if you get past ripeness, we think you can decide the merits right now and that we should win, even if you sort of make the assumption that... Can we move on for a minute to Sanchez's claims? Why are they moot? She has to apply for a waiver every three years or she has to get to credit hours now. And the waiver can be revoked at any time. What makes her claim moot? We think her claim is moot just because the nature of what it is, the release, the prospective release that she's asking for, on the facts of this case is simply a sort of de minimis release because what the situation is that she has already completed the paperwork that shows that she is entitled to this waiver and there's nothing about it that's going to change. How do we know that? Has the agency announced that anybody who has an experience waiver does not have to reapply every three years? No, I'm not disputing the reapplication point. My point is just that... That's the point I'm asking you about. Right, and my answer is just that the nature of what that reapplication entails is de minimis given this... I don't understand how you can say it's de minimis. And maybe it's de minimis to you. It's obviously not de minimis to her. And mootness doesn't depend on how much burden we think there is or isn't. And the waiver can be revoked at any time. So, I don't understand. She has to make a decision now whether to get the credit hours or to risk to take the effort to reapply and to take the risk that it'll be revoked. If I told you that your bar license could be revoked at any moment, would you think that this is just de minimis? No, but I do firmly dispute the notion that it can just be revoked at any moment. That this is not... You know, Aussie doesn't just have untrammeled discretion to yank back waivers. This is a waiver that has criteria. And those criteria... Aussie has already determined that Ms. Sanchez meets those criteria. Let me see. Is the government's position that she now has a permanent experience waiver? No. The government's position is that she does have to reapply in conjunction with the reapplication that she has to do for her facility as a whole, which she is not challenging in any sense. So, as part of that, she also has to resubmit this paperwork, paperwork that she has already completed and the substance of which won't change because the criteria for getting this waiver is about a fixed period of time of experience that she has already satisfied. So, you know, the determination... Essentially, the determination that Aussie has already made can't possibly change unless it comes out somehow that actually she didn't have the experience she already claimed to have. And there's no reason to think that that is the case. If I could... Thank you, Judge Henderson. You can... All right. I'm good with my questions. Appreciate it. All right. Judge Peeler, do you have any questions? No further questions, thanks. All right. Then, Mr. Phillips, thank you. And how much time, Madam Clerk, does Ms. Flaherty have in reply? Counsel has four minutes. All right. Ms. Flaherty? Thank you, Your Honor. The court is correct that it doesn't have to address the cross-appeal and can remand merely on the jurisdictional issue and allow the district court to address it in the first instance. But I would be happy to answer any questions the court has. I wonder, Ms. Flaherty, that you talk about in support of ripeness, that the plaintiffs will have to reapply, and you didn't address the defendant's citation to McConnell v. FEC where the court held that Senator McConnell couldn't challenge a broadcast regulation that wouldn't apply to him until he ran for re-election in the future. And why is that same principle not applicable here to render plaintiff's claims not right? Your Honor, we did cite to the Lake Carriers Association case and the Meade case where regulations had not yet taken effect, but the plaintiffs were allowed to challenge them. But the more important point here is that the regulations have already injured our plaintiffs, and so there's no uncertainty, even if they didn't come into effect for many, many years in the future, there's no uncertainty that they have already injured the plaintiffs. And that injury can be remedied by? By this court enjoining the regulations, and so that they would no longer be subject to the college requirement and no longer have this uncertainty. They could just keep doing their jobs. That's it for me. All right. Judge Garland, you had no questions, right? Correct. Thank you. All right. And thank you, counsel, and the case is submitted. Thank you very much, Your Honors.
judges: Henderson, Garland, Pillard